**United States Bankruptcy Court**
**District of New Jersey**

By: Michael I. Assad (#338972023)
Law Office of Mike Assad, P.C.
923 Haddonfield Road, Suite 336
Cherry Hill, NJ 08002
609-808-3300
mike@mikeassad.law
*Attorney for Plaintiff*

In re: Natricia Deshaye Comer,

*Debtor*.

Natricia Deshaye Comer,

*Plaintiff*,

v.

Westlake Services LLC,
*d/b/a Westlake Financial Services*,

International Recovery Systems Inc.,

*Defendants*.

| | |
|---|---|
| Case No.: | 26-19426-JNP |
| Chapter: | 13 |
| Adv. No.: | ____________ |
| Judge: | Poslusny |

# Verified Complaint for Damages for Willful Violation of the Automatic Stay

Plaintiff Natricia Deshaye Comer, through her attorney, alleges against Defendants Westlake Services LLC, d/b/a Westlake Financial Services, and International Recovery Systems Inc. as follows:

## Jurisdiction and Venue

1. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the District of New Jersey dated July 23, 1984, as amended September 18, 2012.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

3. Under Fed. R. Bankr. P. 7008, the Plaintiff consents to entry of final orders and judgment by the Court.

4. Venue is proper under 28 U.S.C. § 1409(a).

5. This proceeding is brought under Fed. R. Bankr. P. 7001 and 11 U.S.C. § 362(k).

## Parties

6. The Plaintiff is an individual and the debtor in the underlying chapter 13 case.

7. Defendant Westlake Services LLC does business as Westlake Financial Services.

8. Upon information and belief, Westlake is a California limited liability company with a principal place of business at 4751 Wilshire Boulevard, Suite 100, Los Angeles, California 90010.

9. Upon information and belief, Defendant International Recovery Systems Inc. is a vehicle repossession company with a principal place of business at 415 McFarlan Road, Suite 218, Kennett Square, Pennsylvania 19348.

## Facts

### *The Chapter 13 Case*

10. On August 20, 2026 (the "Petition Date"), the Plaintiff filed a voluntary petition under chapter 13 of title 11 of the United States Code, commencing Case No. 26-19426-JNP.

11. The Plaintiff's only earlier bankruptcy case within the past eight years, Case No. 24-22172-JNP, was dismissed on April 10, 2025, more than one year before the Petition Date.

12. No order dismissing the chapter 13 case has been entered.

13. The automatic stay under 11 U.S.C. § 362(a) has been in effect at all times since the Petition Date.

### *The Vehicle and Westlake's Claim*

14. The Plaintiff owns a 2015 Nissan Altima, VIN 1N4AL3AP1FN911464 (the "Vehicle").

15. On February 6, 2019, the Plaintiff bought the Vehicle from CarMax Auto Superstores Inc. under a retail installment contract, which CarMax assigned to Westlake the same day.

16. Under the contract, Westlake holds a security interest in the Vehicle to secure the Plaintiff's obligations under the contract.

17. At all times relevant to this matter, Westlake asserted or held a claim against the Plaintiff, arising under the contract before the Petition Date, for amounts owed for the purchase of the Vehicle (the "Pre-Petition Claim").

18. The contract provides that, if the Plaintiff fails to make a required payment, Westlake may repossess the Vehicle.

19. The contract provides that, after a repossession, the Plaintiff may get the Vehicle back by redeeming it, and that if she does not, Westlake may sell the Vehicle and apply the proceeds to the amounts she owes.

20. Under the contract, repossession is the means by which Westlake enforces payment of the amounts owed under the contract.

21. On August 19, 2026, the day before the Petition Date, Westlake repossessed the Vehicle.

22. When the petition was filed, the Vehicle became property of the bankruptcy estate under 11 U.S.C. §§ 541(a) and 1306(a).

***The Defendants' Knowledge of the Chapter 13 Case***

23. At 1:18 p.m. on the Petition Date, less than an hour after filing the petition, the Plaintiff emailed Westlake at bankruptcynotice@westlakefinancial.com.

24. The Plaintiff attached to that email the Notice of Bankruptcy Case Filing issued by the Clerk of the Court, which identified the Plaintiff, the chapter 13 case number, and the date of filing.

25. The Plaintiff listed Westlake as a creditor on the list of creditors filed in the chapter 13 case.

26. On August 21, 2026, the Bankruptcy Noticing Center sent Westlake the Notice of Chapter 13 Bankruptcy Case, Official Form 309I, by email to bankruptcynotice@westlakefinancial.com.

27. Upon information and belief, bankruptcynotice@westlakefinancial.com is the address Westlake has designated to receive notices of its customers' bankruptcy cases.

28. The notice stated that, while the stay is in effect, creditors cannot "repossess property, or otherwise try to collect from the debtors."

29. The notice also stated that "[c]reditors who violate the stay can be required to pay actual and punitive damages and attorney's fees."

30. The notice also stated that all documents filed in the case may be inspected through PACER (Public Access to Court Electronic Records).

31. Upon information and belief, after the August 19 repossession, IRS held the Vehicle as Westlake's agent at its lot at 1435 River Avenue, Camden, New Jersey.

32. On August 21, 2026, IRS emailed the Plaintiff a confirmation of a "Vehicle Redemption" appointment for the Vehicle.

33. The confirmation stated that the Plaintiff's fee for the transaction was $0.

34. On August 21, 2026, the Plaintiff recovered the Vehicle from IRS.

35. When she recovered the Vehicle, the Plaintiff told IRS about the chapter 13 case.

36. Upon information and belief, Westlake released the Vehicle to the Plaintiff because of the chapter 13 case.

37. Westlake has had actual knowledge of the chapter 13 case since no later than August 20, 2026.

38. IRS has had actual knowledge of the chapter 13 case since no later than August 21, 2026.

***The November 12 Repossession***

39. Before 7:30 a.m. on November 12, 2026, the Vehicle was taken from the Plaintiff's home.

40. Upon information and belief, IRS took the Vehicle at about 2:30 a.m. on November 12, 2026.

41. On the morning of November 12, 2026, the Plaintiff called Westlake.

42. Westlake's representative confirmed that Westlake had repossessed the Vehicle.

43. Upon information and belief, based on Westlake's confirmation that morning that it had repossessed the Vehicle, Westlake directed IRS to repossess the Vehicle.

44. In repossessing the Vehicle, IRS acted as Westlake's agent.

45. Upon information and belief, Westlake repossessed the Vehicle on November 12, 2026, because the Plaintiff had not paid the Pre-Petition Claim and to coerce her to pay it.

46. Two Westlake representatives told the Plaintiff that Westlake had received notification that her bankruptcy case was dismissed on November 10, 2026.

47. The public docket of the chapter 13 case showed, at all times, that the case had not been dismissed.

48. The Plaintiff told Westlake that her case had not been dismissed and that Westlake had violated the automatic stay.

49. A Westlake representative then told the Plaintiff that Westlake would release the Vehicle that afternoon.

50. The same representative told the Plaintiff that a system error must have caused the repossession.

51. Because Westlake had not yet returned the Vehicle, and the Plaintiff could not be sure that Westlake would do what it said, she prepared an emergency motion to enforce the automatic stay and compel turnover of the Vehicle.

52. On the afternoon of November 12, 2026, the Plaintiff filed the motion at the courthouse in Camden, New Jersey.

53. Later that afternoon, after the Plaintiff filed the motion, IRS returned the Vehicle.

*[This space intentionally left blank.]*

***The Defendants' Practices***

54. Upon information and belief, Westlake regularly orders the repossession of its customers' vehicles.

55. Westlake could have confirmed whether the chapter 13 case was pending, or had been dismissed, by checking the case docket on PACER.

56. Upon information and belief, based on its representatives' statements that it had received notification of a dismissal that never occurred and that a system error must have caused the repossession, Westlake relied on its computer systems, without review by an employee, and did not have, or did not follow, a procedure for confirming that a customer's bankruptcy case had been dismissed before ordering the repossession of the customer's vehicle.

57. Upon information and belief, IRS repossesses vehicles for lenders as a regular part of its business.

58. Upon information and belief, IRS did not have, or did not follow, a procedure for checking whether the owner of a vehicle is in bankruptcy before repossessing it, because it repossessed the Vehicle after the Plaintiff had told it that she had filed bankruptcy.

***Repossession Costs and Credit Reporting***

59. The contract provides that Westlake's expenses may include costs incurred in repossessing the Vehicle and holding and storing it.

60. Upon information and belief, Westlake will seek to charge the Plaintiff, or add to her account, the costs of the November 12, 2026, repossession.

61. Upon information and belief, Westlake reports information about its customers' accounts, including repossessions, to consumer reporting agencies.

***Harm to the Plaintiff***

62. November 12, 2026, was the Plaintiff's only weekday off from work that week.

63. The Plaintiff had planned to use November 12 to attend a medical appointment required before a scheduled procedure.

64. The Plaintiff had also planned to use November 12 to complete a mandatory inspection of her housing.

65. Because she spent November 12 calling Westlake and traveling to Camden to file the motion, the Plaintiff could not attend the medical appointment or complete the housing inspection that day.

66. The Plaintiff feared that missing the appointment would delay a procedure she had waited years to have.

67. The Plaintiff feared that missing the housing inspection would be treated as a violation of her lease.

68. The Plaintiff barely slept on the night of November 12, 2026.

69. On November 13, 2026, the Plaintiff missed work to drive back to Camden and file a certificate of service for the motion.

70. To file and serve the motion, the Plaintiff paid for transportation, fuel, copies, and overnight delivery.

71. The Plaintiff works for an insurance company as a licensed account representative.

72. Because she had no paid time off remaining, the Plaintiff's absence from work on November 13, 2026, was unexcused and unpaid.

73. After the repossession, the Plaintiff feared that the time off it forced her to take would lead to discipline by her employer and the loss of her job.

74. On November 16, 2026, the Plaintiff's employer issued her a written warning for attendance, which lists her November 13, 2026, absence.

75. The written warning states that it will affect the Plaintiff's annual performance rating and related monetary increases, as well as her requests to transfer.

76. The Plaintiff's annual performance rating determines her eligibility for a merit raise and an annual bonus.

77. As a result of the Defendants' conduct, the Plaintiff has suffered emotional distress, including fear, anxiety, and lost sleep.

78. As a result of the Defendants' conduct, the Plaintiff has incurred out-of-pocket expenses of at least $95.

79. As a result of the Defendants' conduct, the Plaintiff has lost more than $100 in wages.

80. As a result of the Defendants' conduct, the Plaintiff's employer has issued her a written warning that will affect her performance rating, her eligibility for a merit raise and bonus, and her requests to transfer.

81. As a result of the Defendants' conduct, the Plaintiff has incurred attorney's fees and costs in prosecuting this action.

## Count One
## Willful Violation of the Automatic Stay
## [11 U.S.C. § 362(k)]

82. The Plaintiff incorporates the preceding paragraphs by reference.

83. The filing of the petition operated as a stay of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over

property of the estate," "any act to create, perfect, or enforce any lien against property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(3), (4), (6).

84. Westlake's repossession of the Vehicle was an act to obtain possession of, and to exercise control over, property of the estate, in violation of 11 U.S.C. § 362(a)(3).

85. Westlake's repossession of the Vehicle was an act to enforce its lien against property of the estate, in violation of 11 U.S.C. § 362(a)(4).

86. Westlake's repossession of the Vehicle was an act to collect the Pre-Petition Claim, a claim against the Plaintiff that arose before the commencement of the case, in violation of 11 U.S.C. § 362(a)(6).

87. The acts of IRS, taken within the scope of its agency for Westlake, are the acts of Westlake.

88. Westlake had actual knowledge of the chapter 13 case when it repossessed the Vehicle.

89. Westlake intended to repossess the Vehicle.

90. Westlake's violation of the automatic stay was therefore willful.

91. The Plaintiff, an individual, has been injured by Westlake's willful violation of the automatic stay.

92. Under 11 U.S.C. § 362(k)(1), the Plaintiff is entitled to recover her actual damages, including damages for emotional distress, together with costs and attorney's fees.

93. Punitive damages are appropriate under 11 U.S.C. § 362(k)(1) because Westlake, having been notified of the chapter 13 case by the Plaintiff herself on the Petition Date and having

released the same Vehicle to her at no charge the next day, had the Plaintiff's car taken overnight on the strength of a report of a dismissal that never happened.

94. Punitive damages are also appropriate because Westlake, a sophisticated automobile lender that regularly receives notices of its customers' bankruptcy cases and regularly orders repossessions, either had no procedure for confirming that a customer's bankruptcy case had been dismissed before repossessing the customer's vehicle or did not follow one.

95. Westlake acted with reckless disregard of the Plaintiff's rights under the automatic stay.

96. An award of punitive damages is necessary to deter Westlake from repossessing vehicles protected by the automatic stay.

**Count Two**
**Willful Violation of the Automatic Stay**
**[11 U.S.C. § 362(k)]**

97. The Plaintiff incorporates paragraphs 1 through 81 by reference.

98. IRS's repossession of the Vehicle was an act to obtain possession of, and to exercise control over, property of the estate, in violation of 11 U.S.C. § 362(a)(3).

99. IRS's repossession of the Vehicle was an act to enforce Westlake's lien against property of the estate, in violation of 11 U.S.C. § 362(a)(4).

100. The knowledge of IRS's agents and employees, acquired within the scope of their agency or employment, is the knowledge of IRS.

101. IRS had actual knowledge of the chapter 13 case when it repossessed the Vehicle.

102. IRS intended to repossess the Vehicle.

103. IRS's violation of the automatic stay was therefore willful.

104. The Plaintiff has been injured by IRS's willful violation of the automatic stay.

105. Under 11 U.S.C. § 362(k)(1), the Plaintiff is entitled to recover from IRS her actual damages, including damages for emotional distress, together with costs and attorney's fees.

106. IRS and Westlake are jointly and severally liable for the Plaintiff's actual damages, costs, and attorney's fees.

107. Punitive damages are appropriate under 11 U.S.C. § 362(k)(1) because IRS, which the Plaintiff had told about the chapter 13 case when it gave the same Vehicle back to her less than three months earlier, took the Vehicle from her home overnight.

108. Punitive damages are also appropriate because IRS, a company that repossesses vehicles for lenders as a regular part of its business, either had no procedure for checking whether the owner of a vehicle is in bankruptcy before repossessing it or did not follow one.

109. IRS acted with reckless disregard of the Plaintiff's rights under the automatic stay.

110. An award of punitive damages is necessary to deter IRS from repossessing vehicles protected by the automatic stay.

## Relief Requested

**FOR THOSE REASONS**, the Plaintiff requests that the Court enter judgment in her favor and against the Defendants:

a. declaring that the Defendants' repossession of the Vehicle violated 11 U.S.C. § 362(a) and is void;

b. enjoining the Defendants from charging the Plaintiff, or adding to her account, any fee, cost, or expense of the repossession, storage, or return of the Vehicle;

c. directing Westlake to remove the repossession from its account records and to correct any report of the repossession that it made to a consumer reporting agency;

d. awarding the Plaintiff her actual damages under 11 U.S.C. § 362(k)(1), including damages for emotional distress, against the Defendants, jointly and severally;

e. awarding the Plaintiff her costs and attorney's fees under 11 U.S.C. § 362(k)(1) against the Defendants, jointly and severally;

f. awarding the Plaintiff punitive damages under 11 U.S.C. § 362(k)(1) against each Defendant; and

g. granting further relief in the Plaintiff's favor if necessary and proper under the law.

Date: November 16, 2026

**LAW OFFICE OF MIKE ASSAD, P.C.**
*Attorney for Plaintiff*

By: /s/ Michael I. Assad
Michael I. Assad

**Verification**

I, Natricia Deshaye Comer, am the Plaintiff in this adversary proceeding and the debtor in the chapter 13 case identified in the caption. I have read the Verified Complaint for Damages for Willful Violation of the Automatic Stay. The facts stated in paragraphs 6 through 81 are true and correct based on my personal knowledge and the records of this Court, except those stated upon information and belief, which I believe to be true. I verify under penalty of perjury that the above is true and correct.

Date: November 16, 2026

/s/ Natricia Deshaye Comer
Natricia Deshaye Comer